UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DAN PURJES,                                       :
                                                  :
                        Plaintiff,                :
                                                  :
                                                  :
          -against-                               :
                                                  :
STEVEN PLAUSTEINER and SUSAN                      :
PLAUSTEINER,                                       :
                                                  :
                                                  :
                        Defendants.   :
                                                  :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/10/2016

15-CV-2515 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

          This is at least the fifth judicial or quasi-judicial action that has been brought as a result

of a real estate venture that went bad.  Plaintiff Dan Purjes, who was a minority investor, brings

this action against Defendants Steven and Susan Plausteiner ("Defendants"), who were majority

owners, asserting breach of contract and fraudulent conveyance claims arising from the

development of a 750-acre ski and vacation resort in Vermont by Snowdance, LLC

("Snowdance" or the "Company"), doing business as the Ascutney Mountain Resort.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b), asserting that both claims

are barred by the doctrine of res judicata and that the Amended Complaint fails to state a claim.

The Court held oral argument on Defendants' Motion on January 28, 2016.  For the following

reasons, Defendants' Motion to Dismiss is DENIED.

# BACKGROUND[1]

These claims arise from the parties' participation in the development of the ski resort. Defendants Plausteiners were allegedly the "majority owners of the Company and its sole officers" and Plaintiff Purjes was a "passive minority investor." Am. Compl. ¶¶ 6-7. Purjes lent the Company $1 million (the "Bridge Loan") to finance part of the purchase of a high-speed chairlift (the "Lift"). *Id.* ¶¶ 10-11. The Bridge Loan was memorialized by a promissory note executed by the Company. *Id.* ¶¶ 11-13.

In connection with the Bridge Loan, Purjes and the Plausteiners entered into a Subordination Agreement, which provided that all loans from the Plausteiners to the Company, whenever made (the "Creditor Indebtedness"), were subordinated to the Bridge Loan. *Id.* ¶ 13. Purjes alleges that the Company defaulted on the Bridge Loan in or around November 2001 and then failed to repay it on the date of maturity. *Id.* ¶ 16. According to Purjes, the Subordination Agreement obligated the Company not to pay down any of the Plausteiners' debt until the Bridge Loan had been fully paid. *Id.* ¶ 18. Additionally, according to Purjes, the Plausteiners were obligated "to remit any distribution, proceeds, collateral, or other property collected by Defendants to Plaintiff or to the Company." *Id.* ¶ 19.

In alleged contravention of these obligations, the Plausteiners received funds that should have been remitted to the Company or to Purjes. *Id.* ¶ 20. The Plausteiners, who were the sole shareholders and officers of Snowdance Realty LLC ("Snowdance Realty"), purportedly used that entity as an alter ego to "funnel funds to themselves" from the Company. *Id.* ¶¶ 20-22. The Plausteiners were allegedly able to do so because they were the sole officers of the Company.

---

[1]   The facts are taken from the Amended Complaint (Dkt. 30). At this stage in the litigation, the Court assumes that all facts alleged in the Amended Complaint are true. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

*Id.* ¶¶ 21-22.  Purjes alleges a number of specific instances to support these general alter ego allegations, including that the Plausteiners: used Snowdance Realty to purchase, at a significantly discounted price, a $7 million loan made by Textron Financial Corporation ("Textron") to the Company, *id.* ¶ 24 (the "Textron Loan"); used their own personal funds to transfer the Lift to Snowdance Realty for nominal consideration, *id.* ¶ 23; used Snowdance Realty to sell a leased snow-grooming machine and retain the sale proceeds, *id.* ¶ 25; and disposed of and retained sale proceeds from other Company property, *id.* ¶ 26.  Specific to the breach of the Subordination Agreement, Purjes asserts that the Plausteiners, through Snowdance Realty, purchased the note that evidenced the Textron Loan (the "Textron Note") and then wrongfully collected and retained revenue from timeshare receivables that secured the Textron Loan, *id.* ¶ 27; caused the Company to assume a $55,000.00 liability to Textron, *id.* ¶ 28; and made several direct payments to themselves from the Company.  *Id.* ¶¶ 29-33.

Purjes asserts claims in this Court for: (1) breach of contract, contending that "[t]he Defendants breached the Subordination Agreement by receiving funds that should properly have been paid to the Plaintiff or the Company" and "by using an alter ego to 'leapfrog' Plaintiff's position as a senior debt holder," *id.* ¶¶ 34-39; and (2) fraudulent conveyance, arguing that "Defendants, either directly or through [their] alter ego[], Snowdance Realty, transferred assets of the Company with the actual intent to defraud Plaintiff as a creditor to the Company," *id.* ¶¶ 40-41.

This business breakup has generated much litigation, but none of it precludes this lawsuit.

### A.  Vermont Foreclosure Action

The first lawsuit appears to have been a foreclosure action that was initially brought in early 2008 in Vermont Superior Court ("Vermont Foreclosure Action"), and to which Purjes' company, MFW Associates ("MFW"), was a party.  Defs. Mem. at 7 (Dkt. 32).  The Vermont Superior Court entered a Decree of Foreclosure by Judicial Sale in favor of MFW in July 2013. *Id.* at 13.

### B.  Arbitration Proceeding

From 2009 through 2010, Purjes and the Plausteiners participated in an arbitration before the American Arbitration Association (the "Arbitration").  *See* Defs. Mem., Exs. E-G (Dkts. 32-5 through 32-7) (attaching documents from the Arbitration, *Dan Purjes and Myles F. Wittenstein v. Steven Plausteiner, Susan Plausteiner, Snowdance, LLC, Snowdance Realty Company, and Snowdance Ski Company, and Snowdance Hotel Company*, American Arbitration Association, Case No. 13-489-2477-09); Pl. Opp'n at 9-11 (Dkt. 34); Pl. Nov. 13, 2015 Letter, Exs. A-B (Dkts. 40-1, 40-2).  An Amended Demand for Arbitration and excerpts from the arbitration hearing submitted to this Court reflect that Purjes and Myles Wittenstein, another investor in the ski resort, pursued a slew of claims against the Plausteiners, including, *inter alia*, breach of fiduciary duties, breach of contract, breach of the implied covenants of good faith and fair dealing, and unjust enrichment.  *See* Def. Mem. Ex. E  at 13-20.  The Amended Demand discussed the Bridge Loan (referenced therein as the "Purjes Loan") and asserted that:

> Snowdance is currently in default on its obligation to repay the loan principal and interest on the Purjes Loan.  Moreover, as discussed further below, Mr. Purjes has recently discovered that the Plausteiners fraudulently transferred ownership of the Lift to one of their alter ego entities, Snowdance Realty, in a sham transaction that Steven Plausteiner admitted in writing was intended to defraud Snowdance's creditors.

*Id.* at 5 n.2.  The Arbitration Demand also stated that, "[i]n December 2009, . . . the Plausteiners caused the Textron Note to be purchased, at a discount, by their own, wholly-owned company, Snowdance Realty."  *Id.* at 9.  Purjes and Wittenstein expressed their concern in the Amended Demand that, because the Textron Note was secured by timeshare receivables, the Plausteiners would divert the payments received in satisfaction of those receivables to themselves or, once the Textron Note was repaid, receive a benefit that should go to the Company.  *Id.* at 9.[2]  Following the arbitration hearing and post-hearing briefs, the Arbitrator issued an Award that was limited to two issues—the ownership of the Lift and the validity of two promissory notes.  Defs. Mem. Ex. G (Dkt. 32-7).  The Award was subsequently confirmed in this Court by Judge Sand on February 17, 2011.  *Id.* Ex. H (Dkt. 32-8) (attaching Feb. 17, 2011 Order, *Purjes v. Plausteiner*, No. 10 Civ. 7525 (LBS)).

### C.  New York Supreme Court Action

In 2010, Purjes and Wittenstein filed a petition in New York State Supreme Court seeking injunctive relief in aid of the Arbitration, pursuant to CPLR § 7502(c).  The petition, dated January 22, 2010, stated that Purjes' and Wittenstein's Arbitration claims

> arise out of [the Plausteiners'] breaches of their contractual and fiduciary duties, the looting of Snowdance (a limited liability company, of which the Petitioners are minority owners) by the Plausteiners and their alter-ego entities, as well as the [the Plausteiners'] unjust enrichment at the expense of [Purjes and Wittenstein].

*See* Defs. Nov. 17, 2015 Letter, Ex. 1 ¶ 3 (Dkt. 41-1).  This petition also discussed the Bridge Loan, *id.* ¶ 15, and alleged that the Plausteiners had engaged in self-dealing.  The petition sought

---

[2]      At oral argument before this Court, Purjes argued that his claim in Arbitration was limited to whether the Plausteiners had usurped a corporate opportunity by purchasing the Textron Note.

a temporary restraining order and preliminary injunction to enjoin the Plausteiners from impairing the Company's property or assets and from destroying records or evidence. *Id.* ¶ 36.[3]

### D.  Vermont Superior Court Action

In the summer of 2010, the Plausteiners filed a lawsuit in Vermont Superior Court against Purjes and other defendants (the "Plausteiners' Vermont Action").  *See, e.g.*, Defs. Mem. Ex. I (Dkt. 32-10) (attaching a document from *Steven Plausteiner and Susan Plausteiner, v. Dan Purjes, Myles F. Wittenstein, Mark Blundell and Snowdance LLC*, Dkt. No. 27-1-11 Wrcv (Vt. Sup. Ct.)).  The Plausteiners' claims against Purjes involved equity mortgages provided to Purjes and Wittenstein.  *See* Defs. Mem. at 12; Pl. Nov. 23, 2015 Letter at 2 (Dkt. 42).[4]  According to the Plausteiners, this separate lawsuit alleged that "the transfer of Snowdance's funds and/or assets to Purjes and Wittenstein was made with actual intent to defraud the Plausteiners as senior unsecured creditors by converting junior unsecured debt into secured debt . . . ."  Defs. Mem. at 12.  Two of the defendants in the Plausteiners' Vermont Action, Mark Blundell and Snowdance LLC, asserted counterclaims against the Plausteiners.  *Id.* Ex. I.  The counterclaims alleged that the Plausteiners had engaged in self-dealing relative to the Lift, various other assets of the Company, and cash.  *Id.*; *see also* Pl. Opp'n at 8 (acknowledging that this action was initiated by

---

[3]    The New York Supreme Court issued a Preliminary Injunction on February 18, 2010, enjoining the Plausteiners, *inter alia*, from disposing of any of the Company's property and requiring them to apply all of the timeshare proceeds to the repayment of the Textron Note.  Defs. Feb. 5, 2016 Letter, Ex. 2 (Dkt. 49-2).

In August 2010, after commencement of the arbitration but before the issuance of an award, Purjes returned to New York Supreme Court to request continued enforcement of the February 2010 injunction.  *Id.* Ex. 3 (Dkt. 49-3); *see also* Defs. Nov. 17, 2015 Letter, Ex. 2.  On August 27, 2010, the New York State Supreme Court issued an Order to Show Cause directing the Plausteiners to explain why an Order enforcing the terms of the earlier preliminary injunction should not be entered against them.  *See* Defs. Nov. 17, 2015 Letter, Ex. 2, at 1 (Order to Show Cause, Index No. 600175/10, J. Bransten, Supreme Court of the State of New York, setting a Show Cause Hearing for September 8, 2010 before Judge Ramos).  Judge Ramos ordered an evidentiary hearing; according to Purjes' counsel during oral argument, Purjes decided not to proceed with the evidentiary hearing before Judge Ramos due to the complexity of proving ownership of various assets.

[4]    For reasons that are unclear, Defendants did not include a copy of the Complaint as part of their motion to dismiss.

6

the Plausteiners and that counterclaims were brought "for [the Plausteiner's] improper

misappropriation of Company assets"). Additionally, Blundell and Snowdance claimed that the

Plausteiners "converted Snowdance property to their own use," breached their contract "[a]s

member managers of Snowdance," and breached their fiduciary obligations. Defs. Mem. Ex. I at

6-8. This action ended on May 2, 2013, when all parties, including Purjes, stipulated to dismiss

with prejudice "[a]ll claims and counterclaims." *Id.* Ex. J (Dkt. 32-11).

## DISCUSSION

Defendants move to dismiss the Amended Complaint arguing that (1) Plaintiff's claims

are barred by the doctrine of res judicata, and (2) the Amended Complaint fails to allege

adequately that Defendants acted through an alter ego or fraudulently conveyed assets of the

Company. At the outset, the parties dispute what material from the record the Court may

consider in deciding the Defendants' Motion.

### I.      Materials External to the Amended Complaint

In support of their Motion to Dismiss and during oral argument, Defendants introduced

factual allegations and supporting exhibits outside the four corners of the Amended Complaint.

For instance, Defendants attached to their Motion to Dismiss a "Purchase Agreement," Defs.

Mem. Ex. A (Dkt. 32-1), an excerpt of an "Operating Agreement," *id.* Ex. B (Dkt. 32-2), a

"Subordination Agreement," *id.* Ex. C (Dkt. 32-3), a "Release and Covenant Agreement," *id.* Ex.

D (Dkt. 32-4), and multiple filings from the prior proceedings. *Id.* Exs. E-J.[5] Plaintiff argues

that the Court should disregard all documents outside the Amended Complaint. Pl. Opp'n at 5.[6]

_____

[5]      Plaintiff attached to his opposition a decision by the Vermont Superior Court. Pls. Opp'n Ex. A. (Dkt. 34-1).

[6]      Defendants provided the Court additional documents during oral argument that were not previously in the record before the Court. *See* Defs. Feb. 5, 2016 Letter (Dkts. 49, 49-1 through 49-9).

It is well established in this Circuit that, when deciding a Rule 12(b)(6) motion, a district court may consider, in addition to facts stated in the complaint, documents attached to the complaint as exhibits or incorporated by reference and matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Asscs., Inc.*, 652 F. Supp. 2d 463, 471-72 (S.D.N.Y. 2009); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").

Accordingly, the Court may consider Exhibit C, the Subordination Agreement, because that agreement is integral to, if not incorporated by reference into, Plaintiff's Amended Complaint—Plaintiff relies heavily upon the terms of the Subordination Agreement in his Amended Complaint.  Although Plaintiff failed to attach the Subordination Agreement to his Amended Complaint, he referenced it as though he had done so.  Am. Compl. ¶ 13 ("[T]he 'Subordination Agreement,' attached hereto as Exhibit 'A'"); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (on a motion to dismiss, the Court may consider any documents incorporated into the complaint by reference and, even where not incorporated by reference, documents integral to the complaint where the complaint "relies heavily upon its terms and effect.").

The Court may also consider Defendants' Exhibits E through J, material from prior proceedings, even though Plaintiff makes no mention in his Amended Complaint to any previous litigation or arbitration proceeding arising from the failed real estate development.  The Court may take judicial notice of filings in state or federal court, *see Bd. of Managers of 195 Hudson*

8

*St. Condo.*, 652 F. Supp. 2d at 470-71  (judicial notice of filings in other courts), as well as

filings in an arbitration proceeding, *see Charles Schwab & Co. v. Retrophin, Inc.*, No. 14 Civ.

4294 (ER), 2015 WL 5729498, at *7 (S.D.N.Y. Sept. 30, 2015) (taking judicial notice of an

arbitral award even though plaintiff made no mention of the outcome of the arbitration in his

pleadings because to do otherwise would "prohibit the Court from ever determining the

preclusive effect of an arbitration award on a motion to dismiss."); *Sternkopf v. White Plains

Hosp.*, No. 14-CV-4076 (CS), 2015 WL 5692183, at *5 (S.D.N.Y. Sept. 25, 2015) (taking

judicial notice of an arbitral award because it was an opinion issued in a prior proceeding and

plaintiff did not dispute the authenticity of any of the documents); *Gorbaty v. Kelly*, No. 01 Civ.

8112 (LMM), 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) (finding that "[a]s the

arbitration complaint and award are 'capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned,' Fed. R. Evid. 201(b)(2), the Court

may take judicial notice of them and consider them in deciding the motion.").  The Court

considers the documents "not for the truth of the matters asserted [within them] . . . but rather to

establish the fact" that the prior proceedings and the related filings occurred.  *Kramer*, 937 F.2d

at 774.[7]

---

[7]     Plaintiff did not object to the authenticity of the documents from the judicial and arbitral proceedings submitted by Defendants but instead argued that the documents are merely "snippets" or "cherry-picked documents" that "present an incomplete and inaccurate picture of the matters involved in those prior proceedings." Pl. Opp'n at 6.  To address those concerns, the Court directed Plaintiff "to submit additional documents that he believes are necessary to present a complete and accurate picture of the prior proceedings for the Court to consider when deciding Defendants' Rule 12(b)(6) Motion to Dismiss for res judicata." Oct. 26, 2015 Order at 2 (Dkt. 39); *see also* Pl. Nov. 13, 2015 Letter Exs. A-C (Dkt. 40).  "[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.), *cert. denied*, 506 U.S. 821 (1992); *see also Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993).

II.     **Plaintiff's Claims Are Not Barred By Res Judicata**

Relying on the Arbitration, the action in New York Supreme Court and the Plausteiners'

Vermont action, Defendants argue that Plaintiff's breach of contract and fraudulent conveyance

claims are barred by res judicata.  Defs. Mem. at 1.  "'Under the doctrine of *res judicata*, or

claim preclusion, a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action.'"  *TechnoMarine*, 758

F.3d at 499 (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)).  Res judicata

"'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources,

and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'"  *EDP Med.*

*Comp. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *Allen v. McCurry*,

449 U.S. 90, 94 (1980)).  To demonstrate that a claim is precluded by res judicata, "'a party must

show that (1) the previous action involved an adjudication on the merits; (2) the previous action

involved the [parties] or those in privity with them; [and] (3) the claims asserted in the

subsequent action were, or could have been, raised in the prior action.'"  *TechnoMarine*, 758

F.3d at 499 (quoting *Monahan v, New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir.

2000)); *see also Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001).  Res judicata does not require

the precluded claim actually to have been litigated; its concern, rather, is that the party against

whom the doctrine is asserted had a full and fair opportunity to litigate the claim.  *EDP Med.*

*Comp. Sys.*, 480 F.3d at 626.  "Dismissal based on res judicata is appropriate where it is clear

from the face of the complaint and from matters of which the Court takes judicial notice that

plaintiffs' claims are barred."  *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*,

742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) (quoting *Tokio Marine & Nichido Fire Ins. Co. v.*

*Canter*, No. 07 Civ. 5599 (PKL), 2009 WL 2461048, at *4 (S.D.N.Y. Aug. 11, 2009) (internal

quotations omitted)); *Angell v. U.S. Army Corps of Eng'rs*, 149 F. App'x 34, 36 (2d Cir. 2005).

To determine the preclusive effect of a prior judgment, a federal court sitting in diversity jurisdiction applies the res judicata law of the state in which the court that entered the prior judgment sat. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). In this case, New York and Vermont law determine whether the prior actions will preclude this lawsuit. Whether federal or state law should determine the preclusive effect of an arbitral award is something of an open question in this circuit. *Pike*, 266 F.3d at 90 n.14. When there appears to be no significant difference between state preclusion law and federal preclusion law, the court need not base its res judicata analysis on only one of those sources. *See id.* Because the Arbitration occurred in New York, *see* Defs. Mem. Exs. E-H, either New York or federal law could apply to determine whether the Arbitration precludes this lawsuit. There is no significant difference between New York and federal preclusion law, *see Pike*, 266 F.3d at 90 n.14, so this Court may consider both sources of law to determine preclusion in this case.

Defendants argue that Plaintiff's alter ego claims are precluded by res judicata because Plaintiff's Amended Demand in the Arbitration claimed that Snowdance Realty is the Plausteiner's alter ego. Defs. Mem. at 9-11, 15-19. Defendants also argue that Plaintiff's fraudulent conveyance claim is barred by res judicata because he either litigated or could have litigated that claim in the Arbitration, in New York Supreme Court, or in the Vermont Superior Court action as a counterclaim when the Plausteiners sued him. Defs. Mem. at 19-21. From the face of the records currently before the Court, it is clear that the parties have spent much time and money adjudicating the breakup of the Snowdance real estate venture in other fora. Nonetheless, it is simply not clear from the record that the claims Plaintiff brings in this Court are barred by the doctrine of res judicata.

### A.  Arbitration Proceedings

Starting with the Arbitration, "[i]t is well settled that [the] doctrine [of res judicata]
serves to bar certain claims in federal court based on the binding effect of past determinations in
arbitral proceedings." *Pike*, 266 F.3d at 90.  The doctrine of res judicata "bars the relitigation of
issues previously litigated and resolved" as well as "litigation of claims that could have been
raised in the earlier proceeding, even though not actually raised." *Siegel v. Daiwa Secs. Co. Ltd.*,
842 F. Supp. 1537, 1542 (S.D.N.Y. 1994).

The Court is unpersuaded, however, that Plaintiff's claims were or could have been
raised in the Arbitration.  Plaintiff's claim in this Court is that the Defendants breached the
Subordination Agreement.  The Subordination Agreement is an entirely separate contract from
the Operating Agreement, pursuant to which the Arbitration Proceeding was commenced.
Because the Subordination Agreement does not contain an arbitration provision, it is not at all
clear that Plaintiff's breach of the Subordination Agreement claim could have been included as a
claim in the Arbitration.

It may be that Plaintiff's fraudulent conveyance claims, broadly speaking, arise out of
the Operating Agreement.  Based on the record before the Court, however, there is no evidence
that the fraudulent conveyance claim was actually presented to or decided, or could have been
presented to or decided, by the arbitrator.  Accordingly, the Arbitration proceedings do not bar
Plaintiff's claims.

### B.  New York Supreme Court Action

Under New York law, just as under federal law, "a final judgment on the merits of an
action precludes the parties or their privies from relitigating issues that were or could have been
raised in that action." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008).
The New York Supreme Court Action does not preclude Plaintiff's claims for breach of the

Subordination Agreement or fraudulent conveyance.  That action was a special proceeding

commenced under CPRL § 7502(c) for a provisional injunctive remedy in support of arbitration.

Defendants have offered no support for their position that Plaintiff could have brought their

current claims for damages as part of that proceeding.[8]

### C.  Plausteiners' Vermont Action

The Plausteiners' Vermont Action also does not bar Plaintiff's claims.  Under Vermont

law:

> [A] final judgment in previous litigation bars subsequent litigation if the parties,
> subject matter, and cause(s) of action in both matters are the same or substantially
> identical.  The doctrine bars parties from relitigating, not only those claims and
> issues that were previously litigated, but also those that could have been litigated
> in a prior action.

*Nat. Res. Bd. Land Use Panel v. Dorr*, 113 A.3d 400, 403 (Vt. 2015) (internal quotations and

citations omitted).  Plaintiff argues that "[t]he Vermont Fraud Action was initiated by

Defendants, and the counterclaims in the Vermont Fraud Action were brought by the Company –

not by Mr. Purjes – against Defendants for their improper misappropriation of Company Assets."

Pl. Opp'n at 8.

Although "failure to raise a compulsory counterclaim will result in a bar to future

litigation of the claim," *Pomfret Farms Ltd. P'ship v. Pomfret Asscs.*, 811 A.2d 655, 659  (Vt.

2002), both parties conceded during oral argument that Plaintiff's claims in the instant lawsuit

would have been permissive—not compulsory—counterclaims in the Plausteiners' Vermont

---

[8]       As discussed during oral argument, during the New York Supreme Court proceeding Purjes sought and
received an order obligating the Plausteiners to apply all timeshare receivables that they collected toward repayment
of the Textron note.  Although the New York Supreme Court action does not preclude this lawsuit, Purjes may have
a difficult row to hoe to persuade a finder of fact that when the Plausteiners complied with the New York Supreme
Court order that Purjes sought, they breached the Subordination Agreement.  *See* Am. Compl. ¶ 27.

Action.  Res judicata does not apply to unasserted permissive counterclaims.  *In re Tariff Filing of Central Vt. Pub. Serv. Corp.*, 769 A.2d 668, 673 (Vt. 2001).

In addition, the Plausteiners argue that their Vermont Action bars Purjes, as an owner of MFW, from now raising claims against them because MFW was allegedly in privity with Snowdance, which brought and settled counterclaims against the Plausteiners.  MFW was allegedly in privity with Snowdance because it had "a first mortgage on all of Snowdance's assets."  Defs. Mem. at 21.  Under Vermont law, "[a] privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right." *Lamb v. Geovjian*, 683 A.2d 731, 735 (Vt. 1996) (internal quotation omitted); *Pomfret Farms*, 811 A.2d at 660.  Defendants' assertion that MFW was in privity with Snowdance is based solely on the allegation that Plaintiff's company held a mortgage on Snowdance's assets.  That is too attenuated a relationship for this Court to determine at this point that the two entities were in privity.  Accordingly, the Plausteiners' Vermont Action does not preclude Plaintiff's claims.

### D.  Vermont Foreclosure Action

Finally, during oral argument, Defendants for the first time asserted that the underlying facts regarding the handling of the timeshare receivables (*i.e.*, that they were to be used to pay down the Textron Note) were addressed in the Vermont Foreclosure Action.  Defendants suggested that Plaintiff is therefore precluded from arguing in this Court that the Defendants' collection of those timeshare receivables to pay down the Textron Note breached the Subordination Agreement.

Defendants did not raise this argument in their Motion to Dismiss, so the Court declines to give any weight to the argument at this time.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion.").  Moreover, the parties have not

adequately developed the record to enable the Court to determine whether the Vermont

Foreclosure Action precludes this lawsuit.

In sum, although the Court is less than pleased that this business dispute has spawned so

many lawsuits and that a core factual allegation in Plaintiff's complaint (namely: that

Defendants' use of the time share receivables to pay the Textron loan breached the Subordination

Agreement) may be significantly undercut by court orders in proceedings in which Plaintiff

participated (namely: the Vermont foreclosure action and the action in New York Supreme

Court), it cannot conclude on the current record that the doctrine of res judicata precludes

Plaintiff's claims.

## III.   Plaintiff Adequately States a Claim for Breach of Contract on an Alter Ego Theory and for Fraudulent Conveyance

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550

U.S. at 556).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain

detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to

relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir.

2014) (citation omitted).  "Although for the purposes of a motion to dismiss we must take all of

the factual allegations in the complaint as true, we 'are not bound to accept as true a legal

conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 555).  "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts

consistent with the complaint that would entitle [him] to relief." *Meyer v. JinkoSolar Holdings Co., Ltd.,* 761 F.3d 245, 249 (2d Cir. 2014).

### A. Plaintiff Adequately Alleges that the Plausteiners are Personally Liable for Breach of Contract Through Use of Snowdance Realty as an Alter Ego

Defendants argue that Plaintiff's breach of contract claim should be dismissed because Plaintiff cannot pierce the corporate veil because he fails adequately to allege that Snowdance Realty was the Defendants' alter ego. Specifically, Defendants argue that Plaintiff fails to meet the heightened pleading standard of Rule 9(b) and fails to plead a direct nexus between the Defendants' use of Snowdance Realty and Plaintiff's injury. Defs. Mem. at 22-23.

"Under New York law, a court may pierce the corporate veil where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *MAG Portolio Consultant, GMBH v. Merlin Biomed Grp. LLC,* 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). "To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004). Where a veil-piercing claim is not premised upon an allegation of fraud, it is subject to the liberal pleading standard of Fed. R. Civ. P. 8(a). *Id.*

Although Defendants contend that "the crux of [the Plaintiff's breach of contract claim] is that the Plausteiners *defrauded* Purjes by causing [Snowdance] Realty to purchase the Textron Note in order to 'leapfrog' ahead of Purjes' senior debt holder position," Defs. Mem. at 23 (emphasis in original), Plaintiff asserts that "[t]he crux of [his] allegations is that the Defendants breached the Subordination Agreement by paying off Creditor Indebtedness prior to the complete

repayment of Plaintiff's loan to the Company."  Pl. Opp'n at 14.  When viewing the Amended

Complaint in the light most favorable to Plaintiff, this Court agrees that Plaintiff's breach of

contract claim is not premised on fraudulent conduct and is, therefore, not subject to a

heightened pleading standard of Fed. R. Civ. P. 9(b).

Plaintiff adequately alleges facts to support a direct nexus between the Defendant's use of

Snowdance Realty and Plaintiff's injury.  According to Defendants, "[t]he Amended Complaint

offers averments that are merely a formulaic recitation of the elements of a cause of action for

piercing the corporate veil" and "offers no specific facts that Susan Plausteiner or Stephen

Plausteiner, either collectively or individually, 'used corporate funds and assets for personal

purposes,' received payment, comingled corporate or personal funds, or established any shell

company."  Defs. Mem. at 25.  To the contrary, the Amended Complaint sets forth numerous,

specific allegations regarding how Defendants' abuse of the corporate form injured the Plaintiff.

Am. Compl. ¶¶ 27-32.  Accordingly, Plaintiff adequately alleges that the Plausteiners are

personally liable for breach of contract through their use of Snowdance Realty as an alter ego.

### B.  Plaintiff Adequately Alleges a Claim for Fraudulent Conveyance

Defendants argue that Plaintiff's fraudulent conveyance claim should be dismissed

because Plaintiff fails to plead fraud with the particularity required by Rule 9(b).  Although the

Amended Complaint fails to state whether the fraudulent conveyance claims are brought under

New York or Vermont law, it adequately alleges facts to support a fraudulent conveyance claim

under both.[9]

---

[9]      "[A] federal court sitting in diversity must apply the conflict of laws rules of the state in which the federal
court sits."  *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 665 (S.D.N.Y. 2012)
(internal quotation and citation omitted).   New York choice of law rules in this instance would dictate that Vermont
law applies to the fraudulent conveyance claim.  *See Paradigm*, 842 F. Supp. 2d at 665; *Drenis v. Haligiannis*, 452
F. Supp. 2d 418, 427 (S.D.N.Y. 2006) ("When the law is one which regulates conduct, such as fraudulent
conveyance statutes, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction
has the greatest interest in regulating behavior within its borders.   A tort occurs in the place where the injury was

Under New York and Vermont law, to state a claim for fraudulent conveyance, a plaintiff must plead the requisite mental state (*i.e.*, that the defendant acted with actual intent to hinder, delay or defraud creditors) and, in accordance with Fed. R. Civ. P. 9(b), must do so with particularity.  Vt. Stat. Ann. tit. 9, § 2288(a)(1) (West) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor"); N.Y. Debt. & Cred. Law § 276 (McKinney) ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.").[10]  To plead actual intent, the Plaintiff may plead "'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."  *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 382 (S.D.N.Y. 2013) (applying New York law) (internal citations omitted); *see also* Vt. Stat. Ann. tit. 9, § 2288(b) (providing examples of factors to consider when determining actual intent under Vermont law).[11]

---

inflicted . . . ." (internal quotation and citation omitted)).  It is conceivable, however, that Plaintiff intended to link his fraudulent conveyance claims to the Subordination Agreement.  Under the Subordination Agreement, New York law applies "without regard to the principles of conflicts of law."  Defs. Mem. Ex. C art. 5.

[10]     Courts have not, as Defendants suggest, Defs. Mem. at 29, applied Rule 9(b) to require that a plaintiff in a fraudulent conveyance action meet the standards articulated in *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004), *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993), and *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 514 (S.D.N.Y. 2005) for fraudulent statements, which require specific allegations of (1) the statement that the plaintiff contends were fraudulent; (2) the person who made the statement; (3) where and when the statement was made; and (4) why the statement was fraudulent.  *Cf. Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380 (S.D.N.Y. 2007).  Rather, as provided in the Vermont and New York statutes, a plaintiff alleging fraudulent conveyance need only plead the requisite mental state with particularity.

[11]     Vermont law provides:

(b) In determining actual intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:

Here, Plaintiff adequately alleges a claim for fraudulent conveyance.  Plaintiff alleges that "Defendants, either directly or through one of Defendants' alter egos, Snowdance Realty, transferred assets of the Company with the actual intent to defraud Plaintiff as a creditor to the Company."  Am. Compl. ¶ 41.  Moreover, he supports that allegation with sufficient circumstances commonly associated with fraudulent transfers to give rise to an inference of intent.  For example, the Plaintiff alleges that Defendants engaged in more than one transaction with inadequate consideration, Am. Compl. ¶¶ 23-24, and crossed out the name of the Company on a lease agreement to identify falsely Snowdance Realty, rather than the Company, as the lessee, *id.* ¶ 25.

In sum, the Amended Complaint adequately alleges facts that support the Plaintiff's claim that the Plausteiners are personally liable for breach of contract through their use of Snowdance Realty as an alter ego and for fraudulent conveyance.

## CONCLUSION

Because res judicata does not bar Plaintiff's claims and because the Amended Complaint adequately states claims for breach of contract and fraudulent conveyance, Defendants' Motion

---

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Vt. Stat. Ann. tit. 9, § 2288(b) (West).

to Dismiss (Dkt. 31) is DENIED.  The Clerk of Court is respectfully directed to close Docket

Entry 31.

       The parties are directed to meet and confer on a discovery schedule and, on or before

**February 19, 2016**, to submit a joint letter to the Court proposing a discovery schedule.  The

parties must appear for a status conference on **February 26, 2016, at 10:00 a.m.** in Courtroom

443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007.  The

parties are reminded that, at any time, they may jointly contact Chambers to request referral to a

Magistrate Judge for a settlement conference.


**SO ORDERED.**

Date:  **February 10, 2016**
       **New York, New York**

                                    **VALERIE CAPRONI**
                                    **United States District Judge**